IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br><br>    Plaintiff,<br>   v.<br><br>**SPRING INVESTMENTS, INC; JEFFREY STEVEN FISHMAN; ROCHELLE ADLER**<br>    Defendants. | **CASE NO. 3:25-cv-1113**<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR FRAUDULENT INDUCEMENT**

## NATURE OF THE ACTION

1. Plaintiff, Milberg Coleman Bryson Phillips Grossman, PLLC brings this action against Defendants, Spring Investments, Inc d/b/a Media Merchants Group, Jeffrey Steven Fishman and Rochelle Adler for fraudulent inducement in connection with a marketing agreement under which Defendants charged an upfront fee of over a million dollars and agreed to provide Plaintiff with a specified number of "qualified leads" in exchange for monetary compensation.

2. Defendants knowingly misrepresented their ability and intent to fulfill the terms of the agreement, thereby inducing Plaintiff to enter into a contract and pay a substantial amount of money under false pretenses. Plaintiff seeks damages for losses sustained as a direct result of Defendant's fraudulent conduct.

## PARTIES

3. **Plaintiff**: Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") is a New York Professional Limited Liability Company with its principal place of business in 1311 Ponce de Leon Avenue, San Juan, Puerto Rico, 00907.

4. **Defendants**: The term "Defendants" refers to all Defendants named herein jointly and severally.

5. **Defendant**: Spring Investments, Inc., d/b/a Media Merchants Group, is a South Dakota corporation with a principal place of business at 120 22nd Avenue South, Suite 138, Brookings, SD, 57006.

6. **Defendant**: Jeffrey Steven Fishman is a natural person and, upon information and belief, a resident of the state of California with an address at 7301 Rutherford Hill Dr., West Hills, CA 91307-5204. Mr. Fishman is the Executive President of Spring Investments, Inc.

7. **Defendant**: Rochelle Adler is a natural person and, upon information and belief, a resident of the state of California with an address at 7301 Rutherford Hill Dr., West Hills, CA 91307-5204. Ms. Adler is the Chief Executive Officer of Spring Investments, Inc.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties. Plaintiff is a citizen of a different state than each of the Defendants. Furthermore, the amount in controversy exceeds $75,000, exclusive of interest and costs, thereby satisfying the diversity requirements under federal law. The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as they are part of the same case or controversy under Article III of the United States Constitution..

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in Puerto Rico, including but not limited to Plaintiff's reliance on Defendant's misrepresentations and the execution of the fraudulent contract.

   a. Plaintiff, a law firm with a principal place of business in Puerto Rico, was solicited, negotiated with, and induced into the fraudulent agreement while in Puerto Rico;

   b. Defendants directed their fraudulent misrepresentations to Plaintiff in Puerto Rico via electronic communications, causing injury in Puerto Rico;

   c. Plaintiff transferred over $1,543,100.00 from its Puerto Rico bank accounts to Defendants based on their fraudulent representations; and

  d. The financial harm and damage to Plaintiff's legal operations were sustained in Puerto Rico."

## FACTUAL ALLEGATIONS

10. Milberg is a plaintiff's law firm with over 50 years of experience handling complex litigation, including class actions, consumer protection cases, antitrust matters, mass torts, and environmental litigation.

11. As part of its regular course of business Milberg represents thousands of clients in complex litigation, across multiple practice areas.

12. To ensure that those in need of legal representation are aware of their rights, Milberg routinely engages third-party service providers for marketing and client outreach services.

13. This approach allows the firm to efficiently provide information about its legal services while adhering to all applicable ethical rules governing attorney advertising. This model allows the Firm to focus on delivering high-quality legal representation to a larger number of clients while maintaining compliance with professional and ethical standards.

14. These third-party vendors, generally referred to as "lead generators", are specialized service providers that assist law firms in identifying and connecting with potential plaintiffs for large-scale litigation.

15. In the course of engaging class action lead generators, law firms typically define the parameters of the campaign, specifying the particular case or litigation for which potential claimants are being identified. As part of this process, the firm establishes qualifying criteria to ensure that only individuals who meet the relevant legal and factual requirements—such as documented injuries, exposure to a harmful product or practice, and compliance with applicable statutes of limitations—are considered viable claimants.

16. Once these criteria are set, the law firm and the lead generation vendor agree upon a price per qualified lead, reflecting the effort and resources required to identify individuals who meet the established standards. This structured approach allows for efficient and ethical client outreach while ensuring that only appropriate claimants are connected with legal representation.

17. Plaintiff initially engaged Defendants in 2022 to generate qualified leads for individuals affected by water contamination at Camp Lejeune, relying on Defendants' assurances that they could fulfill the agreed-upon order.

18. Defendants made multiple representations to Plaintiff, including but not limited to:

    a. Stating that they had the capacity, resources, and experience necessary to generate the agreed number of leads;

    b. Representing that they had successfully executed similar campaigns in the past; and

    c. Assuring Plaintiff that they would fulfil their obligations in a timely and professional manner.

19. Plaintiff relied on these representations and made substantial financial commitments based on Defendants' assurances.

20. Plaintiff provided the necessary criteria and expectations for the campaign, and Defendants accepted these terms, representing that they had the experience and capabilities to deliver the requested number of qualified leads.

21. As part of their agreement, Plaintiff paid a total of $1,543,100.00 dollars as deposits to be credited towards qualified leads provided by Defendants.

22. Despite their assurances, Defendants failed to generate the agreed-upon number of leads, materially breaching the agreement.

23. After failing to deliver the agreed-upon number of leads for the Camp Lejeune campaign, Defendants offered to fulfill their obligations by providing leads in connection with a different campaign.

24. On or about May 22, 2024, Defendants knowingly misrepresented their ability and intent to generate 150 qualified leads, each valued at $5,800.00, for individuals affected by exposure to aqueous film-forming foam (AFFF), fraudulently inducing Plaintiff to enter into the agreement.

25. Defendants fraudulently represented that they had the capacity and resources to identify and deliver leads meeting the agreed-upon criteria, knowing that Plaintiff was relying on these assurances in agreeing to the campaign change.

26. However, Defendants failed to provide the promised leads, thereby demonstrating that their representations were made with the intent to deceive and induce Plaintiff into making payment without any intention of performing.

27. To date, Defendants have only provided 29 out of the 150 qualified leads promised under the agreement, failing to deliver the remaining 121 leads despite having accepted payment based on their representations. This substantial shortfall underscores Defendants' lack of intent or ability to perform as agreed, further evidencing their fraudulent inducement of Plaintiff into the contract.

28. On December 20, 2024, Plaintiff formally demanded a refund of $812,000.00 for the undelivered leads. Despite this demand, Defendants have failed and refused to return the funds."

29. Despite multiple opportunities to cure their failure, Defendants have neither provided the outstanding leads nor refunded the corresponding portion of Plaintiff's funds, causing Plaintiff significant financial harm and disruption to its legal efforts.

30. Upon information and belief, Defendants knew or should have known at the time of contracting that it lacked the ability or intent to fulfill its obligations under the agreement.

31. Defendants' misrepresentations were made knowingly, willfully, and with intent to deceive Plaintiff, causing Plaintiff to enter into the agreement under false pretenses.

32. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff suffered significant financial harm, including a. Monetary losses due to non-performance of the contract; b. Lost business opportunities; c. Additional costs incurred in attempting to mitigate Defendant's failure.

## CAUSES OF ACTION
## COUNT I
## FRAUDULENT INDUCEMENT

33. Plaintiff incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

34. Defendants knowingly and intentionally made false representations to Plaintiff concerning their ability and intent to generate the agreed-upon number of qualified leads.

35. Specifically, Defendants represented to Plaintiff that they had the resources, experience, and capacity to generate 150 qualified AFFF leads, valued at $5,800.00 each, and that they would fulfill their obligations in a timely and professional manner.

36. Defendants made these representations with knowledge of their falsity or with reckless disregard for the truth, intending to induce Plaintiff to enter into the agreement and make substantial financial commitments.

37. Plaintiff paid Defendants a total of $1,543,100.00 as deposits to be credited towards qualified leads, in reliance on Defendants' fraudulent representations.

38. Contrary to their representations, Defendants failed to perform as promised, despite having accepted payment from Plaintiff.

39. Upon information and belief, Defendants knew at the time of contracting that they lacked both the ability and intent to perform their obligations under the agreement. Their misrepresentations were knowingly made to induce Plaintiff's reliance and payment.

40. Defendants' misrepresentations were material and directly influenced Plaintiff's decision to enter into the contract and make substantial financial commitments.

41. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered significant financial harm, including but not limited to:

    a. Monetary losses due to Defendants' non-performance;

    b. Lost business opportunities;

    c. Additional costs incurred in attempting to mitigate Defendants' failure;

    d. The unpaid balance of $812,000.00 for undelivered leads.

42. Defendants' fraudulent conduct was willful, intentional, and in reckless disregard of Plaintiff's rights. Their deliberate scheme to obtain payments without the intent to perform justifies an award of punitive damages to deter similar misconduct.

### COUNT II
### Restitution – Unjust Enrichment
### Against Each Defendant Individually and Collectively

43. Plaintiff incorporates allegations in paragraphs 1-43 as if fully set forth herein.

44. Under Puerto Rico law, to establish a claim for unjust enrichment, a plaintiff must demonstrate: (1) the existence of enrichment; (2) a correlative loss; (3) a nexus between loss and

enrichment; (4) lack of cause for the enrichment; and (5) absence of a legal precept excluding the application of enrichment without cause. *Montalvo v. LT's Benjamin Recs., Inc.*, 56 F. Supp. 3d 121, 133 (D.P.R. 2014) (citing *Hatton v. Municipality of Ponce*, 134 D.P.R. 1001, 1010 (1994))

45. Defendants have been unjustly enriched by retaining $812,000.00 in funds that Plaintiff paid for services that Defendants never performed, resulting in an inequitable windfall.

46. Plaintiff conferred a substantial financial benefit upon Defendants by paying for qualified leads that Defendants failed to deliver as promised.

47. Plaintiff suffered a correlative loss as a direct result of Defendants' failure to perform, including the loss of funds paid for undelivered leads.

48. There is a clear nexus between Defendants' enrichment and Plaintiff's loss, as Defendants retained payments while failing to fulfill their contractual obligations.

49. Defendants had no legal or contractual justification for retaining the funds paid by Plaintiff given their failure to perform as agreed.

50. There is no legal precept that precludes the application of the doctrine of unjust enrichment under these circumstances, as allowing Defendants to retain Plaintiff's funds without providing the agreed-upon services would be inequitable.

51. Despite Plaintiff's demand for reimbursement of the remaining balance of $812,000.00 for undelivered leads, Defendants have refused to return these funds, further demonstrating their unjust enrichment.

52. Equity requires that Defendants disgorge the improperly retained funds and make restitution to Plaintiff for the amounts wrongfully withheld.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully requests this honorable Court:

A. Determine that Defendants' conduct as alleged herein constitutes fraudulent inducement and unjust enrichment;

B. Award Plaintiff compensatory damages, including restitution and disgorgement of unlawfully retained funds, in an amount to be determined at trial, but no less than $812,000.00;

C. Award punitive damages in an amount sufficient to punish Defendants for their fraudulent conduct and deter similar wrongful actions in the future;

D. Order that Plaintiff be awarded pre-judgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

E. Order that Plaintiff recovers the costs of suit, including reasonable attorneys' fees, as provided by law; and

F. Grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

___

Respectfully Submitted: February 21st, 2025

*/s/ Luis V. Almeida-Olivieri*
Luis V. Almeida-Olivieri (PR Bar #308307)
Douglas H. Sanders (PR Bar # 302813)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
1311 Ponce de Leon Ave. Suite 600
San Juan, PR, 00907
Tel: (516) 741-5600
Fax: (516) 741-0128
lalmeida@milberg.com
dsanders@milberg.com